OPINION
Anthony Czaplicki is appealing the judgment of the Montgomery County Common Pleas Court designating him to be a sexual predator.
In 1990, Mr. Czaplicki was indicted on four counts of rape, one count of kidnapping, and one count of fleeing and eluding. Mr. Czaplicki entered a plea to one count of rape in exchange for the dismissal of the remaining charges. As a result of the plea, Mr. Czaplicki was sentenced to one to twenty five years of incarceration. The underlying crime occurred as follows.
The victim left a lounge with a man named Ken Farler, who led her to one of his friend's car. Four men, including Mr. Czaplicki got into the car with the victim, leading her to believe they were going to get something to eat and then take her home. The car stopped and the men began smoking marijuana. The victim declined to participate and begged them to let her out of the car. When the victim attempted to escape, a man in the car named Bolin punched her in the face. The men then took her purse and forced her to get money from an ATM. The men then drove behind a church and each man proceeded to rape her. The victim was held down and forced to perform oral sex, while she was repeatedly raped anally and vaginally by each man. The victim again tried to escape when she was first anally raped because the pain was so severe. Unfortunately, she was unable to escape because Bolin again struck her severely in the face. When they were through with her, the victim was dumped behind the church. Eventually, a motorist picked her up and drove her to the police station, where she was taken to the hospital. The victim was bruised all over her body and had to have eye surgery to repair the injuries to her face. Additionally, the victim had to undergo regular psychological treatment as a result of the attack.
On October 12, 2000, a sexual predator hearing was held and Mr. Czaplicki was designated a sexual predator. At the hearing, the State of Ohio (hereinafter "State") presented an exhibit containing the House Bill 180 Screening Instrument; a Sexual Predator Screening Instrument, a Forensic Psychiatry Report; an Institution Summary Report; and a Pre-sentence Investigation Report. These exhibits detailed the circumstances surrounding the crime. Mr. Czaplicki now appeals his designation as sexual predator.
Mr. Czaplicki asserts two assignments of error:
 1. THE TRIAL COURT ERRED IN FINDING APPELLANT TO BE A SEXUAL PREDATOR AS THE EVIDENCE BEFORE THE COURT WAS INSUFFICIENT TO SUPPORT SUCH A FINDING.
2. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant's first assignment of error:
 Mr. Czaplicki argues that the trial court did not present clear and convincing evidence that he was likely to re-offend. We disagree.
A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). Clear and convincing evidence is required to designate an offender a sexual predator. R.C. 2950.09(B)(3). In determining whether an offender is a sexual predator, the trial court considers the factors set forth in R.C. 2950.09(B)(2) as well as any other relevant factors. As each case has a different set of circumstances, some factors will be relevant in one case but have little bearing in another. State v. Bradley (June 19, 1998), Montgomery County App. Nos. 16662, 16664, unreported. The factors enumerated for consideration in R.C. 2950.09(B)(2) are:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illnesses or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The Ohio Supreme Court has stated, "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." State v. Eppinger (2001), 91 Ohio St.3d 159. Although a trial court may not designate an offender a sexual predator based only on their underlying conviction, the trial court may solely rely on the circumstances surrounding the underlying conviction to find that the offender is a sexual predator. Id.; State v. Queary (August 17, 2001), Montgomery App. No. 18300, unreported. This court recently found in Queary that the facts in the underlying crime were so horrific and demonstrated such cruelty that the trial court's designation of sexual predator could be solely supported by those facts alone. Queary, supra. Additionally, the Tenth Appellate District has stated, "We would like to point out that nowhere in R.C. 2950 is there any prohibition against being adjudicated a sexual predator based solely on facts arising from the underlying offense." State v. Henson (Mar. 14, 2000), Franklin App. No. 99AP-553, unreported, appeal dismissed (2000), 89 Ohio St.3d 1453.
Moreover, whether an offender underwent sexual offender treatment is simply one factor to be weighed against other evidence which may indicate a greater risk of re-offending. State v. King (Mar. 7, 2000), Franklin App. No. 99AP-597, unreported. Even though an offender may undergo sexual offender treatment, the factors relating to the underlying crime may appropriately be given more weight and warrant a sexual predator designation. Bradley, supra (holding that the factors surrounding the underlying crime such as the young age of the victim and pattern of abuse were the most influential factors meriting the sexual predator classification, even though the offender had attended sexual offender treatment); State v. Nicholas (April 6, 1998), Warren App. Nos. CA97-05-045, CA97-04-035, CA 97-05-040, CA97-05-046, CA97-05-052, CA97-04-036, CA97-05-044, CA97-05-047, unreported, affirmed (1998),84 Ohio St.3d 20 (finding that sufficient evidence supported the sexual predator designation even though the State only presented evidence on the nature and severity of the underlying crime and the defendants presented evidence of completion of a variety of programs completed while incarcerated.)
In the instant case, the trial court looked at the enumerated statutory factors as well as other relevant factors in designating Mr. Czaplicki a sexual predator.
The nature of the crime and cruelty demonstrated during Mr. Czaplicki's offense was heinous. In this case, the victim was led to believe that she was going to get something to eat and then be taken home. Mr. Czaplicki and three other men then proceeded to smoke marijuana, denying her pleas to let her out of the vehicle and striking the victim when she tried to escape. They then forced the victim to give them her access code so that they could get money out of an ATM with her bank card, stating, "What's your number bitch and you'd better not lie." After stealing her money, the men started to take her home, but one of the other men then stated, "Fuck her, let's go to Eastwood." The men then proceeded to drive her to the rear of a church, where they began to rape her. In total, the victim was raped seventeen times by the men. Each man raped her at least one time vaginally and anally. During five of the times that she was being vaginally and anally raped, she was forced to simultaneously perform oral sex on another man. Two men in the car held the victim down while she was being raped by the other two men. When the victim was first anally raped the pain was so severe that she attempted to escape again. One of the men in the car struck a severe blow to her face with his fist to keep her in the vehicle so that they could rape her. After having been vaginally and anally raped five times in the vehicle and having been forced to perform oral sex four times, the victim was dragged out of the vehicle by her hair onto the ground, where she was again raped vaginally and anally while being forced to perform oral sex on Mr. Czaplicki. Mr. Czaplicki was an active participant in the rapes. In addition to holding the victim down while the other men repeatedly raped her, he personally raped the victim vaginally and anally while forcing her to perform oral sex on another man and forced her to perform oral sex on him twice while she was being vaginally and anally raped by another man.
Finally, when the men were through raping and terrorizing the victim, the four men drove away in the vehicle, abandoning the victim in the parking lot. Fortunately, the victim was able to get picked up by a motorist and be taken to the police department, who then transported her to the hospital. At the hospital, the victim had severe bruising all over her body. Additionally, she had to undergo two eye surgeries with extended hospital stays because of the severe blows to her face. Additionally, the victim has had to undergo regular psychological treatment as a result of this attack. All of these events were described in the evidence presented to trial court in the State's exhibit. These horrific circumstances surrounding the underlying crime are sufficient clear and convincing evidence alone to support the trial court's designation of Mr. Czaplicki as a sexual predator.
However, additional factors such as Mr. Czaplicki's extensive criminal record and substance abuse support his designation as a sexual predator. As a juvenile, Mr. Czaplicki was convicted of breaking and entering twice, carrying a concealed weapon, aggravating menacing, and drug abuse. As an adult, Mr. Czaplicki was convicted of receiving stolen property, theft of a motor vehicle, and theft. Moreover, Mr. Czaplicki has been arrested for numerous traffic violations, disorderly conduct on three occasions, misdemeanor assault, and misdemeanor drug abuse. Further, prior to his current incarceration, Mr. Czaplicki had been incarcerated for a year due to a parole violation. While incarcerated on the underlying charge, Mr. Czaplicki has been cited for various rule violations, including fighting, and several substance abuse problems. This past criminal behavior is also a strong indicator that Mr. Czaplicki is likely to recidivate.
Moreover, Mr. Czaplicki's extensive and continued substance abuse places him at high risk for recidivism. This court has held that substance abuse is a factor indicating potential recidivism. State v. Champion (Aug. 4, 2000), Montgomery App. No. 18044, unreported. Further substance abuse may exacerbate anti-social behavior. Id. Mr. Czaplicki admitted that he has been abusing substances since he was ten or eleven years old. Although most frequently Mr. Czaplicki abuses marijuana and alcohol, he also has experimented with PCP, LSD, cocaine, crack, quaaludes, valium, xanax, and toluene. When he committed the underlying offense he had been abusing alcohol and marijuana. Prior to his current incarceration, Mr. Czaplicki has been through several substance abuse treatment programs, including residential programs. Even while incarcerated Mr. Czaplicki continued to abuse substances. Usually one's drug abuse is constrained once one is incarcerated. However, despite attendance at AA, NA, and other mandatory drug treatment programs, Mr. Czaplicki continues to abuse substances, violating the rules of incarceration to do so. On multiple occasions while incarcerated Mr. Czaplicki has either tested positive for marijuana or been found in possession of marijuana and had to attend substance abuse programs. Mr. Czaplicki's inability to remain sober while incarcerated, when substances to abuse are limited, makes it unlikely that he will able to remain sober when released from incarceration. An appropriate factor for the trial court to consider, Mr. Czaplicki's substance abuse history also increases his likelihood of recidivism.
Although Mr. Czaplicki completed sex offender treatment while incarcerated, completion of such programs are not conclusive evidence that the defendant will not re-offend. As stated above in King, the completion of treatment programs are merely one factor for the trial court to consider and weigh against the other factors. No evidence exists in this case that the trial court failed to consider Mr. Czaplicki's attendance at the treatment programs. The trial court in fact acknowledged that Mr. Czaplicki had taken several positive steps and encouraged him to continue in his efforts. (Tr. 6). Therefore, the trial court considered this evidence but validly found that it was outweighed by the evidence of his high risk of recidivism.
Finally, Mr. Czaplicki asserts that sufficient evidence was not presented because one of the recidivism tests given to him by the court appointed psychologist stated that his likelihood of re-offending was 6.5%. We disagree. This was merely one of several recidivism tests given to Mr. Czaplicki and other tests placed him at higher risk. Further, the trial court had the discretion to review the evidence and determine what weight to give the psychological tests. The trial court may have chosen to give little weight to the result of the recidivism test as it had sufficient clear and convincing evidence in the circumstances surrounding the underlying crime, plus Mr. Czaplicki's criminal history and substance abuse to merit designating him a sexual predator. Mr. Czaplicki's first assignment of error is without merit and overruled.
Appellant's second assignment of error: Mr. Czaplicki argues that because his counsel did not present any evidence at the sexual predator hearing and did not arrange for Mr. Czaplicki's counselors to testify at the hearing that he did not receive effective assistance of counsel. We disagree.
In order to establish that a defendant was rendered ineffective assistance of counsel, the defendant must demonstrate (1) that his trial counsel's efforts fell below an objective standard of reasonableness, and (2) that the errors of trial counsel were serious enough to create a reasonable probability that, "but for" the errors, the outcome of the hearing would have been different. Strickland v. Washington (1984),466 U.S. 668. A strong presumption exists that trial counsel's conduct fell within the broad range of reasonable professional assistance. State v. Seiber (1990), 56 Ohio St.3d 4, 11. Further, counsel will not be deemed ineffective for failing to pursue every possible trial tactic. State v. Clayton (1980), 62 Ohio St.2d 45, 16 O.O.3d 35, certiorari denied (1980), 449 U.S. 879.
In the instant case, Mr. Czaplicki argues that his trial counsel was deficient in failing to present any evidence, specifically failing to subpoena Mr. Czaplicki's counselors from the prison. At the hearing, Mr. Czaplicki only stated that he would have liked these individuals to testify; he did not state what relevant evidence they could offer to the court. Moreover, the record does not demonstrate that with the testimony of these individuals the outcome of the hearing would have been different. Even if the counselors had appeared and testified that Mr. Czaplicki had successfully completed sex offender treatment, the trial court would have still likely designated Mr. Czaplicki a sexual predator. As stated above, the trial court was aware Mr. Czaplicki had completed sexual predator treatment and weighed this low recidivism factor against the high recidivism factors of the nature of the offense, the cruelty demonstrated during the offense, Mr. Czaplicki's criminal history, and his substance abuse. The factors demonstrating a high likelihood of recidivism clearly outweighed Mr. Czaplicki's completion of sexual offender treatment. Therefore, the testimony of the counselors would not have changed the outcome of the hearing. Thus, Mr. Czaplicki cannot demonstrate that he was rendered ineffective assistance of counsel and the second assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
BROGAN, J. and GLASSER*, J., concur.
* Hon. George M. Glasser sitting by assignment of the Chief Justice of the Supreme Court of Ohio).