DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Daryl Heard, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Larry Belton was shot and killed in the early morning hours of October 30, 2004 in his apartment. Akron police immediately began their investigation by speaking with Belton's live-in girlfriend, Sheryl McCalister. McCalister was able to identify one of the men present at the time of the shooting by his nickname, Shorty Fats. In addition, through a photo array, McCalister identified the sole female defendant in the apartment, Kristie Guiser.
 {¶ 3} Police continued their investigation and discovered that Shorty Fats was a nickname used by Lachurn Terry. In addition, police learned that Guiser was the girlfriend of Heard, aka Petey. As a result, the Akron police began their search for Guiser and Heard, eventually locating them with the help of U.S. Marshals. Upon being arrested, Guiser was interviewed on multiple occasions by Detectives John Bell and Michael Schaeffer. Guiser revealed to the detectives that Terry, Heard, and a man she knew only as Good Game had robbed and killed Belton. Through further investigation, police determined that Good Game was a nickname used by Gregory Hilliard. McCalister was then shown photo arrays which included photos of Heard and Hilliard. McCalister positively identified both Hilliard and Heard from the arrays.
 {¶ 4} Heard, Guiser, Hilliard, and Terry were indicted on the following counts: one count of aggravated murder in violation of R.C. 2903.01(B); two counts of murder in violation of R.C.2903.02(B); one count of aggravated robbery in violation of R.C.2911.01(A)(1); and one count of having weapons under disability in violation of R.C. 2923.13. The charges for aggravated murder, murder, and aggravated robbery each contained a firearm specification.
 {¶ 5} On June 1, 2005, a jury trial commenced against Heard, Hilliard, and Terry. Prior to trial, Guiser had entered into a plea agreement and agreed to testify against the remaining defendants. During trial, the State primarily relied upon the testimony offered by Guiser and McCalister. McCalister was able to positively identify each of the defendants as having been present at the apartment the night Belton was killed. In addition, McCalister testified that Terry held her down after Belton was shot, preventing her from aiding him in any manner. Guiser's testimony included the following. Hilliard and Heard entered the apartment, displaying guns, in an attempt to rob Belton. Belton began to struggle with Heard. Heard then called out to Good Game (Hilliard), who shot Belton in the hip. Heard and Hilliard then ransacked the apartment, searching for money and valuables.
 {¶ 6} The State also introduced the testimony of Summit County Chief Medical Examiner Dr. Lisa Kohler. Dr. Kohler testified that Belton died from massive internal bleeding caused by the gunshot wound. Dr. Kohler went on to testify that the bullet that entered Belton had damaged several sections of Belton's bowel, but was a treatable wound. Dr. Kohler concluded her testimony by noting that there was a good possibility that Belton could have survived the wound had he received prompt medical attention.
 {¶ 7} Once the State rested its case, each of the defendants moved for acquittal. Each motion was denied by the trial court. The defense then rested without presenting any evidence and the defendants renewed their motions. The motions were again denied and the matter submitted to the jury. Heard and Hilliard were found guilty of each count in the indictment. Terry was found not guilty of having a weapon under disability and not guilty of the firearm specifications, but guilty of the remaining counts in the indictment. The trial court, thereafter, sentenced the defendants accordingly. Heard received an aggregate sentence of life in prison plus three years for the firearm specification. Heard timely appealed his convictions, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 ASSIGNMENT OF ERROR II
"APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} In his assignments of error, Heard urges that the State produced insufficient evidence to support his conviction for aggravated murder and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 9} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.)
State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. Therefore, we will address Appellant's assertion that his conviction was against the manifest weight of the evidence first as it is dispositive of Appellant's claim of insufficiency.
 {¶ 10} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 11} Heard was convicted of aggravated murder[1] in violation of R.C. 2903.01(B) which provides as follows:
"No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." In support of his assertions, Heard argues that the State failed to prove the requisite mens rea element for aggravated murder, i.e., that the act was committed purposely.[2] We disagree.
 {¶ 12} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Further, because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the surrounding circumstances." State v. Logan (1979),60 Ohio St.2d 126, 131. In the instant matter, this Court cannot say that the jury lost its way in concluding that Heard's accomplice purposefully caused the death of Belton.
 {¶ 13} In State v. Seiber (1990), 56 Ohio St.3d 4, the Supreme Court rejected the argument now raised by Heard. Id. at 13-14. In Seiber, the defendant urged that he had shot the deceased in the back, a wound that was not necessarily fatal. Id. at 13. The Seiber Court found that the use of a firearm, from close range, coupled with the defendant's actions which restrained others from helping the victim, established that the defendant had acted purposely. Id. at 13-14. We are presented with analogous facts herein. The State presented evidence that Hilliard shot Belton from close range. Terry then prevented McCalister from aiding Belton. Additionally, while Belton was shot in the hip, "[a] firearm is an inherently dangerous instrumentality, the use of which is likely to produce death." Id. at 14, quoting State v. Widner (1982), 69 Ohio St.2d 267,270. This Court is further compelled to find that Belton's death was the result of a purposeful act from the testimony of the Summit County Medical Examiner, Dr. Lisa Kohler. Dr. Kohler testified that there was a strong possibility that Belton could have survived his wound had he received immediate medical contention. McCalister noted as well that Belton was gasping for air by the time she was able to contact medical personnel. Accordingly, Heard's acts, along with those of his accomplices, evidence a specific intention to cause Belton's death. Belton was shot at close range by a deadly weapon and the defendants restrained McCalister in her attempts to contact medical personnel. This Court, therefore, cannot say that the jury lost its way in finding that Heard, as an accomplice, purposely caused Belton's death.
 {¶ 14} Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra, at *2. Appellant's first and second assignments of error are overruled.
 III. {¶ 15} Heard's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J., Whitmore, J., concur.
[1] We note that while no evidence demonstrated that Heard fired the gun which killed Belton, he has not argued that he was not properly convicted as an accomplice. See State v. Johnson
(2001), 93 Ohio St.3d 240, 245-46.
[2] Heard has not challenged any of the remaining elements of his aggravated murder conviction.