OPINION
Defendant-appellant, Lila N. Hancock, appeals her conviction in the Clermont County Court of Common Pleas for insurance fraud. For the reasons that follow, we affirm the decision of the trial court.
In July 1997, appellant reported to the Miami Township Police that someone had broken into a residence she owned in Clermont County between 9:30 a.m. and 3:45 p.m. and had stolen some of her personal property. When Officer William Adams of the Miami Township Police Department responded to the scene, appellant reported that she discovered three items were missing: an antique curio cabinet, a handmade table and a bottle of wine. Appellant told Officer Adams that she suspected that the tenant at the property stole the items because the tenant had previously asked appellant about them. Appellant estimated that the value of each of the missing items was as follows: $700 for the curio cabinet, $1,000 for the table and $3,000 for the bottle of wine.
Detective Trevor J. Spencer responded to appellant's residence to investigate the alleged crime. Detective Spencer found no evidence of forcible entry. Appellant again reported that her tenant was probably a good suspect because she had a key to the residence. There were many boxes throughout the house and appellant stated that she was in the process of moving. Appellant was uncertain if anything was missing from the boxes until she had the opportunity to investigate further, but she felt that there probably was nothing of significant value missing from them. Appellant again confirmed that an antique curio, a table and a bottle of wine were the only items that she knew for certain were missing.
Appellant filed a claim for the stolen items and the damage to her residence with Ohio Casualty Group, the provider of her homeowner's insurance. Appellant completed a "Schedule of Property" as part of the claim process. She identified a "forced entry and robbery" during "late evening hours" as the reason for her losses. Appellant listed twenty-seven items or categories of items that were stolen with a total approximate value of $40,000. Tom Procter, a claims representative for Ohio Casualty Group, suspected that appellant's claim was potentially fraudulent when he noticed that appellant's list of missing items was substantially different from anything she communicated to the police prior to filing her insurance claim. In addition to the difference in the quantity of items, appellant's estimated value for the curio cabinet was over fourteen times greater than that which she reported to the police. Procter reported to Detective Spencer that he suspected appellant filed a fraudulent insurance claim.
Detective Spencer later learned that appellant owned a pole barn on land in a nearby township. Detective Spencer searched the barn pursuant to a warrant and discovered numerous items stored there that matched the descriptions of property appellant reported missing.
Appellant was indicted on one count of insurance fraud and one count of tampering with records. At the conclusion of the state's evidence, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion. The trial court found appellant guilty of insurance fraud, but adjudicated her not guilty of tampering with records. Appellant appeals from the decision of the trial court and raises two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF COUNT 1 OF THE INDICTMENT, INSURANCE FRAUD.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S ORAL MOTION FOR JUDGMENT OF AQUITTAL [sic] UPON THE STATE'S FAILURE TO PROVE THAT THE INSURANCE COMPANY HAD PROPER LICENSURE IN THE STATE OF OHIO.
In her assignments of error appellant argues that the state presented insufficient evidence to convict her of insurance fraud.[1] Specifically, appellant asserts that the state failed to prove that she knew that the information she provided to Ohio Casualty Group was false. Appellant also maintains that the state did not prove that Ohio Casualty Group was an insurer authorized to engage in the business of insurance in Ohio.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
The state can use either direct evidence or circumstantial evidence to prove the elements of a crime. See, e.g., State v.Durr (1991), 58 Ohio St.3d 19. Circumstantial and direct evidence are of equal probative value. Jenks, 61 Ohio St.3d at paragraph one of the syllabus.
Appellant was convicted of insurance fraud in violation of R.C.2913.47(B)(1), which states:
 (B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:
 (1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive[.]
An "insurer" includes any person who is authorized to engage in the business of insurance in Ohio under R.C. Title 39. R.C.2913.47(A)(3). A "statement" includes a letter, memorandum, proof of loss, a financial statement, an estimate of property damage, and data in any form. R.C. 2913.47(A)(5). A statement is deceptive when that statement, in whole or part,
 would cause another to be deceived because it contains a misleading representation, withholds information, prevents the acquisition of information, or by any other conduct, act, or omission creates, confirms, or perpetuates a false impression, including, but not limited to, a false impression as to law, value, state of mind, or other objective or subjective fact.
R.C. 2913.47(A)(2).
Appellant first asserts that the state introduced no evidence that establishes that she knew that the information she provided to Ohio Casualty Group was false or that she acted with the purpose to defraud Ohio Casualty Group. Appellant maintains that the evidence is quite clear that she did not have a grasp of all of the items that were stolen or their respective values when she first reported the alleged breaking and entering.
Surrounding facts and circumstances often must establish the intent of an individual with respect to the commission of a crime, because of its difficulty of proof. See, e.g., State v. Seiber
(1990), 56 Ohio St.3d 4, 13-14; Jenks, 61 Ohio St.3d at 274-75. It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of her voluntary acts. State v. Lott (1990) 51 Ohio St.3d 160, 168. Purpose requires an intention to cause a certain result or to engage in conduct that will cause that result. See R.C. 2901.22(A). And a person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
The evidence in this case shows that the property schedule that appellant submitted to Ohio Casualty was markedly different in quantity and value than that which she reported to Officer Adams and Detective Spencer. Appellant listed on the property schedule twenty-seven items or groups of items as stolen with a total approximate value of $40,000. She identified a "forced entry and robbery" during "late evening hours" as the cause of her losses despite the fact that Detective Spencer found no evidence of a forcible entry. In sharp contrast to the property schedule, appellant reported to the police that the theft occurred between 9:30 a.m. and 3:45 p.m. and was probably committed by her tenant who had a key to the premises. Appellant only reported three missing items with an approximate value of $4,700. While appellant told Officer Adams that the allegedly stolen antique curio was worth $700, on the property schedule she estimated its value fourteen times greater.
After securing a warrant, Detective Spencer searched a pole barn owned by appellant and discovered items stored there that matched the description of the property listed on the property schedule. At trial, two of appellant's former husbands and a former tenant testified that many of the items appellant reported as stolen on the property schedule were stored in the barn. One of her ex-husbands even testified that he had in his possession a designer coat from New York City's Garment District that appellant represented as missing.
From this evidence, any rational trier of fact could conclude that appellant, with the purpose to defraud, submitted the property schedule to Ohio Casualty Group in support of a claim for payment pursuant to her insurance policy knowing that the property schedule was false or deceptive.
Appellant next argues that the state failed to prove that appellant tried to defraud an "insurer" under R.C. 2913.47(B)(1) because the state did not provide any direct evidence that Ohio Casualty Group is an authorized to engage in the business of insurance in Ohio.
Pursuant to R.C. 2913.47(A)(3) an "insurer" includes "any person that is authorized to engage in the business of insurance in this state under Title XXXIX of the Revised Code * * * ." R.C. Title 39 prescribes detailed requirements with which a business entity must comply before the superintendent of insurance can permit it to engage in the insurance business in Ohio. When the superintendent finds that
 the company is properly organized and has complied with the law entitling it to transact business and issue policies * * * he shall furnish the company with his license reciting that it has complied with the law and is entitled to transact the business authorized and described therein, which license shall be the authority of such company to commence business and issue policies.
 So long as such insurance company complies with the law, the superintendent, annually upon its application, shall renew such license, certified copies of which may be used in evidence for or against the company in all actions.
R.C. 3925.11. R.C. 3905.42 further provides that
 No company, corporation, or association, whether organized in this state or elsewhere, shall engage either directly or indirectly in this state in the business of insurance, or enter into any contracts substantially amounting to insurance, or in any manner aid therein, or engage in the business of guaranteeing against liability, loss, or damage * * * unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with.
The state did not introduce into evidence Ohio Casualty Group's license or any other direct evidence that it is "authorized" to engage in the business of insurance in Ohio. However, the state introduced into evidence, without objection, a copy of the policy issued to appellant by Ohio Casualty Group that guaranteed her home and personal property against loss. Further, the policy lists a Hamilton, Ohio address for the company. Attached to the copy of the policy is the affidavit of Michael R. Cavalieri, stating that he is "Underwriting Analyst for Ohio Casualty Group of the Ohio Casualty Group of the city of Hamilton, State of Ohio." Appellant submitted a claim pursuant to this insurance policy covering Ohio property and she fully expected Ohio Casualty Group to reimburse her for her alleged losses.
From such circumstantial evidence, a reasonable trier of fact could infer that Ohio Casualty Group is authorized to engage in the business of insurance in the state of Ohio. That Ohio Casualty Group issued a contract of insurance to appellant guaranteeing her property against loss is circumstantial evidence that Ohio Casualty Group, pursuant to R.C. 3905.42, was expressly authorized to enter into such a contract in the state of Ohio and had complied with applicable laws and regulations.
Appellant quotes State v. Kirkland (Apr. 9, 1998), Franklin App. No. 97APA07-873, 1998 WL 164999, unreported, at considerable length in support of her argument that there is insufficient evidence that Ohio Casualty Group is an "insurer" pursuant to R.C.2913.47. Kirklandis inapposite to this case for two reasons. First, contrary to established case law, Kirkland appears to suggest in a conclusory manner that the state can only use direct evidence to prove that an entity is an insurer under R.C. 2913.47. Cf. Jenks, 61 Ohio St.3d at paragraph one of the syllabus (holding that direct and circumstantial evidence are of equal probative value to prove an element of an offense).
Second, Kirkland is factually distinguishable from appellant's case. In Kirkland, the tenth district held that the state failed to prove that Indiana Insurance, an out-of-state insurance carrier, was properly authorized to engage in the business of insurance in Ohio. The evidence the state introduced consisted of the following: (1) the defendant submitted an application for an Indiana Insurance policy through an insurance agency located in Columbus, (2) an Indiana Insurance field claims representative working out of the company's Columbus office received the loss notice and investigated the claim, and (3) a Columbus law firm represented Indiana Insurance and interviewed the defendant regarding his claim. Kirkland, 1998 WL 164999 at *8. The court concluded that this evidence failed to establish that Indiana Insurance was an insurer as defined in R.C. 2913.47(A)(3).
Contrary to Kirkland, this case involves a domestic insurance company rather than an out-of-state insurance company. Foreign insurance companies, like out-of-state business entities in general, have unique additional regulations with which they must comply before they will be authorized to engage in business in the state of Ohio. See R.C. Chapter 3927. Further, unlike Kirkland, the state introduced into evidence a copy of the actual contract of insurance between Ohio Casualty Group and appellant that guaranteed appellant's property in Ohio against loss. The policy and the accompanying affidavit declared that Ohio Casualty Group was located in the city of Hamilton in the state of Ohio. Appellant purchased the policy from Ohio Casualty Group to protect property located in Ohio and made a claim for losses to that property with the expectation that the insurance company was authorized under Ohio law to insure her property in the first instance and later reimburse her for her claimed losses. Yet, despite appellant's actions, she argues disingenuously that Ohio Casualty Group was somehow not authorized to engage in the business of insurance. This circumstantial evidence is of equal probative value as direct evidence in establishing that Ohio Casualty Group is licensed to sell insurance in Ohio. See Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Although it is conceivable that Ohio Casualty Group might be engaging in the insurance business without authorization, appellant offered no evidence to rebut the reasonable inference that Ohio Casualty Group is an "insurer" pursuant to R.C. Title 39.
After viewing the evidence in the record in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of insurance fraud under R.C. 2913.47(B)(1) proven beyond a reasonable doubt. Accordingly, appellant's assignments of error are overruled.
WALSH, J., concur.
VALEN, J., dissents.
[1] Appellant cites legal authority regarding manifest weight of evidence as relevant legal authority for her claim that the state failed to provide sufficient evidence to convict her of insurance fraud. The legal concepts of sufficiency of the evidence and weight of the evidence are not synonymous. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. The terms are both quantitatively and qualitatively different. Id. at paragraph two of the syllabus. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in trial to support one side of the issue rather than the other." Id. at 387 (emphasis deleted). Sufficiency is a term of art that tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. Id. at 386. We need not address whether appellant's conviction is against the weight of the evidence since appellant's assignments of error and supporting arguments only pertain to the sufficiency of evidence. App.R. 12(B); see, also, State v. Watson (1998), 126 Ohio App.3d 316,321.