OPINION
Defendant-appellant, Roger Michalosky, appeals his conviction in the Middletown Municipal Court for unauthorized use of property. We affirm the decision of the trial court.
Gary Jefferies is a preventive maintenance technician for the Middletown Division of Time Warner Cable. His responsibilities include detecting and correcting signal leaks in the cable system. Cable signal leaks can interfere with police and fire communications sharing the same aeronautical band.
In March 2000, Jefferies detected a large signal leak in the cable lines around 6350 Hursh Road. Jefferies ascended in a "cherry picker" to investigate the lines and connections in the area. He determined that a terminator was causing the leak. Terminators are resistors that prevent signal leakage from spigots in the cable line. Jefferies noticed that someone had drilled through the center of the terminator. A cable leading from the residence at 6350 Hursh Road had been pushed through the terminator into a spigot. Jefferies disconnected the cable leading to the residence and placed a new locking device onto the spigot. Jefferies reported the tampering to his supervisor.
Chris Gabinski, a loss prevention investigator for Time Warner Cable, received a report of the tampering from the Middletown office. On July 20, 2000, Gabinski drove to the residence to investigate. Using a ladder, Gabinski climbed up a telephone pole near the residence. He observed that someone had completely drilled out the new locking device and reconnected the cable leading to the residence. Gabinski descended the ladder and attached a signal analyzer to the cable where it was attached to the residence. The signal analyzer indicated that the cable was feeding the entire Time Warner video system into the house. The video frequencies were Time Warner's actual cable signal, not interference from other communications devices.
Gabinski also observed that the cable line attached to the house was split into two lines. One cable ran to the first floor and the other entered the second floor of the residence through a window. Gabinski noticed the "splitter" device was labeled "Archer," which is a brand sold by Radio Shack and not used by Time Warner technicians. Gabinski checked Time Warner's records and found that there had been no authorized cable service at the residence for at least one and one-half years. Gabinski reported his findings to the Butler County Sheriff's Office.
Detective Carrie Schultheiss of the Butler County Sheriff's obtained a deed of the property located at 6350 Hursh Road. According to the deed, appellant and his wife, Julie Michalosky, owned the property. Detective Schultheiss went to the residence on July 24 to investigate. Detective Schultheiss informed appellant's wife that "there was a problem with Time Warner Cable." Michalosky told Schultheiss she did not think that they had cable, but indicated that appellant was the head of the household and took care of the bills. Detective Schultheiss never made contact with appellant. However, appellant's property was investigated again on July 27 and this time the cable leading to the home was disconnected.
Appellant was charged with one count of unauthorized use of property and one count of possession of an unauthorized cable television device. The trial court dismissed the charge of possession of an unauthorized cable television device. Appellant pled not guilty to the remaining charge and was tried to the bench.
Jefferies, Gabinski and Detective Schultheiss testified on behalf of the state. In addition, the state presented the testimony of Special Deputy William Kelly. Kelly and appellant are members of the Butler County Sheriff's Office Mounted Patrol. Kelly testified that during a monthly meeting that year appellant indicated to another member that he knew how to "hook up cable." At the conclusion of the state's evidence, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion.
Appellant testified in his own defense and denied that his home was receiving unauthorized cable service. According to appellant, the wiring was in place when he and his wife purchased the home. Appellant maintained that they were receiving satellite television service. Appellant's wife testified consistently with appellant, stating that their home received satellite service, not cable.
Four of appellant's friends testified that they had never witnessed cable television in his residence. Another friend testified about appellant's reputation for truthfulness in the community.
The trial court found appellant guilty of unauthorized use of property. The trial court sentenced appellant to pay a $250 fine and serve ten days in jail, which was suspended. Appellant appeals from his conviction and raises three assignments of error for review.
Assignment of Error No. I:
 THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT KNOWINGLY USED OR OPERATED THE PROPERTY OF ANOTHER WITHOUT CONSENT, IN VIOLATION OF O.R.C. 2913.04(A).
Assignment of Error No. III:
 THE TRIAL COURT'S DECISION FINDING THE APPELLANT GUILTY OF UNAUTHORIZED USE OF PROPERTY OF ANOTHER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
In his first and third assignments of error, appellant argues that the state presented insufficient evidence at trial to convict him of unauthorized use of property. Specifically, appellant maintains that the state never proved that he actually used Time Warner's cable signal in his home.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. A court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
The state can use either direct evidence or circumstantial evidence to prove the elements of a crime. See, e.g., State v. Durr (1991),58 Ohio St.3d 19. Circumstantial and direct evidence are of equal probative value. Jenks, 61 Ohio St.3d at paragraph one of the syllabus.
Appellant was tried on one count of unauthorized use of property in violation of R.C. 2913.04(A), which states: "No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent." Property means "any property, real or personal, tangible or intangible," including "cable television service [or] other telecommunications service * * *." R.C. 2901.01(10)(a).
A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or be of a certain nature, and a person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B). Surrounding facts and circumstances often must establish the intent of an individual with respect to the commission of a crime, because of its difficulty of proof. See, e.g., State v. Seiber (1990), 56 Ohio St.3d 4, 13-14; Jenks,61 Ohio St.3d at 274-75.
On behalf of the state, Jefferies testified that he discovered that someone had tampered with a terminator on the cable line, allowing Time Warner's cable television signal to be transmitted through a cable attached to appellant's residence. Jefferies did not know who tampered with the terminator. However, he disconnected the cable leading to appellant's residence and placed a new locking device on the cable line.
Approximately four months later, Gabinski drove to appellant's residence to investigate. Gabinski found that someone drilled through the new locking device and reconnected a cable to the residence. Time Warner's entire video system was again being directed into the residence. Gabinski testified that there had been no authorized Time Warner cable service at appellant's residence for at least one and one-half years.
Detective Schultheiss testified that she informed appellant's wife that there was an investigation pertaining to Time Warner Cable. Michalosky denied having cable, but informed Detective Schultheiss that appellant was the head of the household and took care of the bills. Shortly after making contact with Michalosky, further investigation revealed that the cable had been disconnected. Appellant's colleague, Kelly, testified that appellant openly professed to know how to "hook up cable."
There is abundant circumstantial evidence in this case from which a rational trier of fact could conclude that appellant knowingly used or operated Time Warner's cable television system without authorization. As a result, the trial court did not err in denying appellant's Crim.R. 29 motion. Appellant's first and third assignments of error are overruled.
Assignment of Error No. II:
 THE TRIAL COURT'S DECISION FINDING THE APPELLANT GUILTY OF UNAUTHORIZED USE OF THE PROPERTY OF ANOTHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, appellant argues that his conviction is against the manifest weight of the evidence.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, 59; City of Middletown v. Ramsey (Sept. 19, 1988), Butler App. No. CA87-11-149, unreported. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In contrast to the state's evidence, appellant testified in his own defense and denied that he was using unauthorized cable service. Appellant claimed that the wires were present on the home when he and his wife purchased it. On cross-examination, appellant could not explain why locking devices on two separate occasions had been significantly altered to allow Time Warner's video signal to be transmitted into his home. Nor could appellant explain why the cable leading from his residence had been reconnected after Jefferies disconnected it.
Appellant, instead, testified that he had satellite service. However, his testimony regarding the alleged installation and use of the satellite system contradicted the testimony of his wife. In addition, on cross-examination appellant basically admitted that for a period of time he was receiving unauthorized satellite transmissions.
Appellant offered the testimony of four friends regarding the existence of cable television in his home. Three of the witnesses simply testified that they did not witness any channels they recognized to be "cable." None of the three witnesses offered any testimony regarding the second television that appellant admitted was in his home. The fourth friend never actually watched television in appellant's house and only testified that he never noticed a cable television station when his child watched television with appellant's stepson.
There was ample evidence presented by the state to convict appellant of the crime for which he was charged. It is the role of the trial court to weigh the state's evidence against appellant's attempt to demonstrate that he did not indulge in the unauthorized use of Time Warner's cable television service. It is the role of the trial court to assess the credibility of the witnesses and determine which aspects of the testimony was credible. Based on a thorough review of the record, we find that the trier of fact neither lost its way nor created a manifest miscarriage of justice by finding appellant guilty of unauthorized use of property. Appellant's convictions are not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.