OPINION
{¶ 1} Michael Ross is appealing his conviction for felonious assault by the Montgomery County Common Pleas Court.
 {¶ 2} On September 24, 2002 at approximately 9:00 p.m., several members of the Dayton Police Department were executing a search warrant at an apartment at 229 Victor in Dayton, Ohio. The police officers were led by Officer Sean Copley. Officer Tim Braun was also a member of the team, and Detective Michael August had made a "controlled buy" at the apartment building earlier in the day. While inside the apartment, Detective August had observed weapons on the kitchen table. Prior to entering the building, the police officers were concerned about the possible presence of a "doorman." A "doorman" acts as security for a drug house and is typically armed as drug houses are frequently robbed.
 {¶ 3} As the team of officers approached the house, the officers noticed a man standing on the porch. The officers identified themselves and ordered the man to the ground. As the man was lowering himself to the ground, the rear door to the house opened. The officers, who were approximately ten feet away from the door at the time, observed a heavy-set man wearing a blue sports jersey at the door. This man was later identified as Michael Ross. The officers were only able to see half of Ross's body as the other half was hidden behind the door.
 {¶ 4} Officer Copley made eye contact with Ross and identified himself as a police officer. Copley ordered Ross to get down and at that point saw a silver handgun in Ross's hand The weapon was later identified as a fully operational and loaded nickel-plated semi-automatic handgun. At this point, Ross attempted to shut the door. As he was shutting the door, Ross raised the gun and pointed it at Officer Copley's chest. At this point, the officer saw a beam of light coming from the gun. The gun was later determined to have a laser beam shot on the weapon to assist the shooter with aiming the gun.
 {¶ 5} Officer Copley ran towards the door and wedged his foot in the door in order to prevent Ross from shutting the door. Officer Copley also braced his shoulder against the door in an attempt to prevent the door from being shut. Despite Officer Copley's efforts, he was having difficulty opening the door, and Officers Braun and Kowalski had to help push the door open. While attempting to push the door open, Officer Copley repeatedly yelled, "He's got a gun." With the assistance of the other officers, the police were able to open the door. While pushing the door open, Officer Braun identified themselves as "Police." Moreover, the officers were wearing marked uniforms with badges sewn on to them and a helmet marked "police" across the front.
 {¶ 6} Once they opened the door, Officers Braun and Copley looked behind the door and saw Ross in a corner leaned against the wall, pointing the gun at the officers. Officer Copley yelled, "Drop the gun, drop the gun." Fearing that Ross would shoot either himself or Copley, Officer Braun shot Ross in his right upper arm. Officer Copley then pointed his gun at Ross and told him to "show me your hands, show me your hands." Ross was then secured while medical assistance was called for him. Ross's gun was found on a milk crate near where he was shot. Ross did not put down the weapon until he was shot.
 {¶ 7} Later, while at the hospital, Ross was interviewed by a detective and admitted that the gun belonged to him. Additionally, Ross admitted that he was at the Victor address acting as a "doorman."
 {¶ 8} Ross was subsequently indicted on two counts of felonious assault on a peace officer in violation of R.C. 2903.11
with firearm specifications, one count of obstruction of business in violation of R.C. 2921.31(A), with a firearm specification, and one count of having weapons while under disability. Regarding the felonious assault charges, one of the charges was for an assault on Officer Copley and the other charge was for an assault on Officer Braun. A trial by jury was held on the felonious assault counts and the obstruction of business charge. The having weapons while under a disability charge was tried to the court. Ross was subsequently found guilty of one count of felonious assault for the assault on Officer Copley, one count of obstruction, and the one count of having weapons while under a disability. Ross was then sentenced to eight years of incarceration.
 {¶ 9} Ross has since filed this notice of appeal, raising the following assignments of error:
 {¶ 10} "[1.] The trial court committed reversible error and deprived appellant of due process of law by overruling a defense motion for acquittal where the evidence was insufficient to establish felonious assault as a matter of law."
 {¶ 11} "[2.] The trial court committed reversible error and deprived appellant of due process of law by entering judgment of conviction for felonious assault where such judgment was against the manifest weight of the evidence."
 {¶ 12} Appellant's first assignment of error:
 {¶ 13} Ross argues that the trial court erred in overruling his motion for an acquittal, arguing that there was insufficient evidence based on State v. Brooks (1989), 44 Ohio St.3d 185. We disagree.
 {¶ 14} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 15} R.C. 2903.11 states:
 {¶ 16} "(A) No person shall knowingly do either of the following:
 {¶ 17} "(1) * * *
 {¶ 18} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 19} An attempt is defined in R.C. 2923.02 as:
 {¶ 20} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 21} The Ohio Supreme Court has held that one can infer from the defendant's action under the circumstances whether the defendant possessed an intent to cause serious physical harm.State v. Seiber (1990), 56 Ohio St.3d 4, 15. In State v.Woods (1976), 48 Ohio St.2d 127, syllabus, the Ohio Supreme Court stated that criminal attempt occurs when a defendant "purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose."
 {¶ 22} In Brooks, the Supreme Court examined whether the act of pointing a gun at someone absent more amounted to evidence of felonious assault. The Court concluded that absent any other evidence, the mere act of pointing a gun at someone was not sufficient evidence for a conviction for felonious assault. Id. In Brooks, the defendant engaged in a heated exchange with a barmaid and pointed a gun at her, stating he would kill her. Id. The Court found that the defendant's statements in the situation amounted to sufficient additional evidence of an intent to cause physical harm to the barmaid justifying the conviction for felonious assault. Id. In State v. Green (1991),58 Ohio St.3d 239, the Supreme Court elaborated stating,"[t]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault.'" InGreen, the defendant pointed a loaded shotgun at a police officer and stated, "If you don't have a warrant get the fuck out of my house." Id. This threat when combined with pointing a rifle at a police officer was found to be sufficient evidence justifying a felonious assault conviction. Id.
 {¶ 23} In State v. Jackson (Dec. 11, 1997), Cuyahoga App. No. 72014, the Eighth District Court of Appeals examined a case where a defendant pointed a loaded weapon at a police officer but did not make any threatening comments or fire the weapon in the officer's presence. In Jackson, the defendant had a gun on his person and when he saw the officers fled the area. Id. After chasing the defendant, the officers cornered the defendant on the roof of a garage. Id. The defendant then threw his jacket in the direction of the officer's head while he reached for his gun. Id. The defendant looked in the officer's direction and held the gun waist high, pointing it at the officer. Id. The officer fired at the defendant first, preventing him from shooting the officer. Id. The court found that the surrounding facts presented sufficient evidence from which one could conclude that the defendant took substantial steps towards causing the officer physical harm in the form of throwing his jacket at the officer, producing the gun, and pointing it at the officer while looking in his direction. Id. Thus, the court upheld the defendant's conviction for felonious assault. Id.
 {¶ 24} We find the facts in the instant case similar to those in Jackson. In this case, Officer Copley was entering a known drug house, and Ross admittedly was an armed "doorman" at the drug house. The evidence established that "doormen" at drug houses are generally armed and act as security for the house. When Ross saw Copley and the other officers outside of the building, who were clearly marked as "police", Ross looked at Copley and raised the gun, pointing the loaded, operable gun with its laser pointer at Copley's chest. Despite Officer Copley's orders for Ross to get down on the ground, Ross kept the gun pointed at Copley's chest while he attempted to close the door to the building. Officer Copley along with two other officers had to struggle against the door in order to reopen the door. While pushing against the door, Officer Copley repeatedly ordered Ross to "Drop the gun." Upon having opened the door, Ross was cornered behind the door and again pointed the gun at Officer Copley's chest. (Tr. 178). Despite the officers' repeated orders to drop the gun, Ross continued to aim the gun at Copley's chest until Officer Braun shot Ross in the arm. Only at this point did Ross cease pointing the gun at Copley and release it. We believe that the factual circumstances of this case, including the physical scuffle between the police and Ross over closing the door, the repeated act of pointing the laser aimed gun at Copley's chest while making eye contact with the officer, and Ross's staunch refusal to drop the gun or even cease pointing it at the officer despite being cornered and the police's repeated orders to do so, amount to sufficient evidence in this case that Ross was attempting to cause physical harm to Officer Copley.
 {¶ 25} Ross's first assignment of error is without merit and is overruled.
 {¶ 26} Appellant's second assignment of error:
 {¶ 27} Ross argues that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 28} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175.
 {¶ 29} In asserting that his conviction was against the manifest weight of the evidence, Ross asserts that there was a lack of consistent evidence regarding an overt act for the felonious assault. Having reviewed the evidence presented at the trial, we do not agree. The State presented the testimony of several officers who testified regarding the raid on the suspected drug house that night and the frequency and danger of seeing armed "doormen" at these residences. Additionally, both Officer Braun and Copley testified regarding seeing Ross look at Copley, point his weapon at Copley's chest, struggle with the officers over closing the door, and continue to point the gun at the officers even after being cornered once the door was open. This evidence, particularly when combined with additional evidence that the officers identified themselves and repeatedly ordered Ross to drop his weapon, supports Ross's conviction. Although Ross presented a witness, Ramel Alexander, who stated that he did not hear the police identify themselves but rather only heard the officers yell "He has a gun," Alexander's testimony was inconsistent and contradicted by physical evidence as well as other testimony. After reviewing the evidence, we do not agree with Ross that his conviction was against the manifest weight of the evidence. Ross's second assignment of error is without merit and is overruled.
 {¶ 30} The judgment of the trial court is affirmed.
Fain, P.J. and Brogan, J., concur.