[Cite as *State v. McCarty*, 2016-Ohio-4734.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-P-0064** |
| KEITH A. McCARTY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2015 CR 00331.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Ruth R. Fischbein-Cohen,* 3552 Severn Road, #613, Cleveland Heights, OH 44118 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} After entering a plea of guilty to six counts of sexual battery, each a felony of the third degree, appellant, Keith A. McCarty, was sentenced to an aggregate term of 24 years imprisonment. He now appeals from the Portage County Court of Common Pleas acceptance of his guilty plea, the judgment overruling his motion to withdraw his guilty plea, his sentence, and he challenges his counsel's effectiveness. For the reasons that follow, we affirm the trial court's judgments.

**{¶2}** On May 8, 2015, appellant was indicted by the Portage County Grand Jury on 24 counts. The charges included: two counts of rape of a child less than 13 years old, in violation of R.C. 2907.02(A)(1)(b) and (B); four counts of rape, in violation of R.C. 2907.02(A)(2); six counts of sexual battery, in violation of R.C. 2907.03(A)(5); six counts of gross sexual imposition, in violation of R.C. 2907.05; and six counts of unlawful conduct with a minor, in violation of R.C. 2907.04. Appellant pleaded not guilty to all charges.

**{¶3}** The matter proceeded to jury trial on May 27, 2015. The morning of trial, the prosecutor, defense counsel, and appellant met with the trial judge in chambers to make a record of the plea negotiations. The state summarized two separate offers that included various third- and/or third- and fourth-degree felonies which appellant had rejected. The judge confirmed that defense counsel had discussed the ramifications of each offer, as well as the consequences of being found guilty after trial. Appellant stated he understood he was facing the potential of life imprisonment if he were found guilty; he still stated he did not wish to plead.

**{¶4}** The matter proceeded to jury trial and the state's initial two witnesses were Ravenna police officers who took the victim's information and statement when she arrived at the station to report the abuse. Both officers testified the victim was reluctant to provide details and made little eye contact. The victim reported unwanted sexual occurrences over the past eight years by her mother's boyfriend, appellant. She further provided a brief written statement and the information was forwarded to detectives.

**{¶5}** The victim testified she was a student at Kent State University at the time of the trial. Before attending school, she was involved in a heated argument with her

mother when she disclosed appellant's sexual abuse for the first time via text message. She asserted the abuse began when she was 10 years old and continued until she was 16 years old.

{¶6} The victim stated she, her mother, her siblings, and appellant lived together as a family in three separate locations from the time her mother began her relationship with appellant. She testified appellant was "the man of the house" with authority to punish the children, but not spank.

{¶7} The victim testified that between 2006 and 2013, appellant sexually abused her in a range of ways. The abuse would commence with appellant sitting on the edge of the victim's bed, where he would rub her stomach and legs. The rubbing ultimately progressed to appellant placing his hand in the victim's pants where he would digitally penetrate her. The victim was unable to recall how many times this occurred.

{¶8} Eventually the abuse escalated to appellant engaging in oral as well full sexual intercourse with the victim. The victim was unable to detail the amount of times appellant sexually accosted her and was not clear on the frequency. She testified she did not invite or desire appellant's advances; she stated she did not tell anyone because appellant was the primary bread winner of the family and, in any event, she "didn't know what to say * * * didn't understand what was going on [and] * * * didn't want anybody to know." During her junior year of high school, the victim testified she finally told two friends about the sexual abuse. She, however, requested that her friends not disclose the abuse to anyone.

{¶9} On cross-examination, the victim denied disclosing the abuse to hurt her mother; instead, she admitted she reported the sexual abuse to change her mother's view of appellant.

{¶10} Defense counsel compared the victim's testimony and her statement to police and noted a variety of inconsistencies including the reported length of abuse and her age relating to the first and last time intercourse occurred. Defense counsel also challenged the victim's memories of dates and addresses.

{¶11} Defense counsel subsequently objected to the state's next two witnesses, friends of the victim. The parties agreed that the limited purpose of the friends' testimony would be to establish a time frame and not the details of the vicim's disclosure. Both friends testified in this limited fashion. The proceedings recessed for the evening.

{¶12} On the following morning, "in the middle of a jury trial, and as a result of the victim's testimony," defense counsel confirmed appellant "now wants to enter a plea." Appellant entered a written plea of guilty to counts seven through twelve, six counts of sexual battery, in violation of R.C. 2907.03(A)(5), all felonies of the third degree. On May 28, 2015, after a full plea colloquy, the trial court accepted the plea and nolled the remaining counts of the indictment. The matter was referred to the Adult Probation Department for a presentence investigation report.

{¶13} On June 1, 2015, appellant filed a pro se motion to withdraw his guilty plea. In the motion, he alleged he "was misinformed and coerced to make such deal." The trial court scheduled a hearing on the motion for June 29, 2015.

4

**{¶14}** Appellant failed to appear at the hearing; and, it was discovered, he cut off his electronic monitoring bracelet and fled the jurisdiction because he "didn't want to get sentenced." Appellant was ultimately apprehended and the matter proceeded to hearing on July 31, 2015. Appellant testified in support of his motion, asserting he was lied to by his defense counsel and coerced into accepting the state's plea offer. The trial court denied the motion and proceeded to sentencing. After declaring appellant a Tier III sex offender, the trial court imposed consecutive terms of 48-months imprisonment on each of the six felonies. This appeal follows.

**{¶15}** Appellant's first assignment of error provides:

**{¶16}** "Keith McCarty was deprived of his due process right when the trial court accepted his plea which was in violation of Crim.R. 11."

**{¶17}** Under this assignment of error, appellant contends his plea was not entered voluntarily because, at the time he made his decision, he "felt he had no other choice." He claims that, in this state of mind, counsel noted the judge "told him that he had better plead" and advised him the judge tends to issue harsh sentences. As a result of these purported "scare tactics," he accepted and entered the plea.

**{¶18}** When determining whether the trial court has met its obligations under Crim.R. 11 in accepting a plea, appellate courts have distinguished between constitutional and non-constitutional rights. With respect to the constitutional rights, a trial court must advise a defendant that, by pleading guilty, he or she is waiving: "(1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require the state to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination." *State v.*

5

*Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, syllabus. A trial court must strictly comply with those provisions of Crim.R. 11(C) that relate to the waiver of constitutional rights and the failure to do so invalidates the plea. *Veney, supra*; *see also State v. Lavender*, 11th Dist. Lake No. 2000-L-049, 2001 Ohio App. LEXIS 5858, *11 (Dec. 21, 2001).

**{¶19}** Alternatively, the remaining non-constitutional rights set forth under Crim.R. 11 require the court to: (1) determine the defendant understands the nature of the charge(s) and possesses an understanding of the legal and practical effect(s) of the plea; (2) determine the defendant understands the maximum penalty that could be imposed; and (3) determine that the defendant is aware that, after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence. *See* Crim.R. 11(C)(2)(a) and (b); *see also State v. Nero*, 56 Ohio St.3d 106, 108 (1990). Although literal compliance with Crim.R. 11 as it pertains to the non-constitutional rights is preferred, an advisement substantially complying with the letter of the rule is legally sufficient. *Nero, supra*. A court substantially complies where the record demonstrates the defendant, under the totality of the circumstances, subjectively understood the implications of the plea and the rights waived. *Id*.

**{¶20}** Furthermore, even when a trial court fails to substantially comply with the non-constitutional requirements of Crim.R. 11(C), such an error is reversible if a defendant demonstrates he or she was prejudiced by the lack of compliance. *State v. Johnson*, 40 Ohio St.3d 130, 134 (1988); *see also* Crim.R. 52(A); Crim.R. 33. The test for prejudice is "whether the plea would have otherwise been made." *Nero, supra.*

**{¶21}** At the plea hearing, the trial judge specifically inquired whether appellant, by entering the plea, understood that he was voluntarily waiving: his right to a jury trial;

his right to confront witnesses; his right to cross examine witnesses; his right to subpoena witnesses; as well as his right to require the prosecutor to prove his guilt beyond a reasonable doubt. Appellant expressly stated he understood he was voluntarily waiving each of the foregoing rights.

{¶22} The trial judge further explained the specific charges to which appellant was pleading and inquired whether appellant understood the nature of these charges. Appellant stated he did. The court further advised appellant of the maximum penalty of the charge as well as the sexual offender classification and post-release control sanctions to which he would be subject. Appellant stated he understood. Finally, the court asked appellant whether he understood that, after accepting his guilty plea, it may immediately proceed with judgment and sentencing. Appellant stated he did.

{¶23} There is nothing in the record to indicate appellant had been pressured into pleading to the charges or that his autonomy had, in any way, been compromised by any outside influence. To the contrary, in an effort to ensure appellant understood his rights and that he was knowingly and voluntarily waiving the same, the court asked appellant if he had any questions. Appellant responded in the negative. The court then asked appellant "just for the record, we're almost at the end of a jury trial, are you sure you do not want to continue?" Appellant replied, "I don't want to continue."

{¶24} The record demonstrates the trial court thoroughly advised appellant of both his constitutional and non-constitutional rights. From the colloquy, it is clear that appellant knowingly, voluntarily, and intelligently, entered the guilty plea. We perceive no error in the trial court's acceptance of the same.

{¶25} Appellant's first assignment of error lacks merit.

7

{¶26} Appellant's second assignment of error alleges:

{¶27} "Keith McCarty was denied his constitutional guarantee to effective assistance of counsel."

{¶28} Under this assigned error, appellant contends his trial counsel was ineffective because he failed to diligently prepare for trial. He further argues counsel was ineffective by using alleged "scare tactics" in advising him to accept the state's offer of a guilty plea.

{¶29} For appellant to prevail on his claim of ineffective assistance of counsel, we must first conclude that counsel's performance fell measurably below that which might be expected from an ordinary fallible attorney. Second, we must conclude that appellant suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, appellant must show, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Seiber*, 56 Ohio St.3d 4, 11 (1990). A reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. *Strickland*, supra, at 689. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995).

{¶30} With the foregoing standard in mind, appellant waived any issue relating to counsel's ineffectiveness prior to his voluntary entry of his guilty plea. *See, e.g., State v. Platt*, 11th Dist. Portage No. 89-P-2065, 1990 Ohio App. LEXIS 3508, *5 (Aug.17, 1990) ("a plea of guilty waives all defects in the case except lack of subject matter jurisdiction of the court[.]"). Once a guilty plea is entered before the trial court and judgment is

8

rendered on the basis of that plea, an appealing party's ability to challenge the judgment on appeal is significantly narrowed. *Id.* To wit, a criminal defendant may only contest (1) the subject matter jurisdiction of the trial court or (2) whether the plea was entered knowingly, voluntarily, and intelligently, as required by Crim.R. 11. *Id.*

{¶31} Appellant's allegations of ineffectiveness, i.e., counsel's purported lack of trial preparation, his alleged dishonesty, as well as counsel's alleged lack of diligence and use of so-called "scare tactics" to compel appellant to enter his plea of guilty, relate to counsel's actions occurring either prior to or during the course appellant's truncated trial. None of the allegations are jurisdictional in nature. Accordingly, appellant's voluntary plea of guilty waived these arguments on appeal.

{¶32} Appellant's second assignment of error lacks merit.

{¶33} We shall address appellant's fourth assignment of error next; it provides:

{¶34} "The trial court erred in denying Keith McCarty's Motion to vacate guilty plea."

{¶35} Appellant moved to vacate his guilty plea because, prior to pleading, he "felt his lawyer totally lost it and that he had no choice left" but to enter the plea. He contends he only did so because he believed his counsel had essentially conceded defeat. Appellant further emphasizes counsel used "scare tactics" to compel the plea; to wit, he contends counsel advised him that the trial judge wanted him to plead and, if he continued with trial, the judge had an alleged predisposition for meting out harsh sentences.

{¶36} Crim.R. 32.1 provides a means for a criminal defendant to withdraw a guilty plea and states, "[a] motion to withdraw a plea of guilty or no contest may be

9

made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶37} Here, appellant moved the court to withdraw the guilty plea prior to sentencing. While motions to withdraw guilty pleas before sentencing should be freely allowed, a court is not required to grant such a motion as "the right to withdraw a plea is not absolute." *State v. Ziefle*, 11th Dist. Ashtabula No. 2007-A-0019, 2007-Ohio-5621, ¶9, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). In entering judgment on such a motion, a trial court must hold a hearing and assess whether "there is a reasonable and legitimate basis for the withdrawal of the plea." *Ziefle*, *supra.* After considering the basis of the motion, the trial court's decision to grant or deny a presentence motion to withdraw a guilty plea is within its sound discretion. *Ziefle*, *supra.* Accordingly, we review a trial court's judgment on a motion to withdraw a guilty plea for an abuse of discretion. *State v. Gibbs* 11th Dist. Trumbull No. 98-T-0190, 2000 Ohio App. LEXIS 2526, *6-*7 (June 9, 2000). An abuse of discretion occurs if the trial court fails to ""exercise sound, reasonable, and legal decision-making."" *State v. Sawyer*, 11th Dist. Portage No. 2011-P-0003, 2011-Ohio-6098, ¶72, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶38} Generally, this court has applied the four-factor test set forth in *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist.1980), to determine whether a trial court has abused its discretion in denying a presentence motion to withdraw a plea. *State v. Parham*, 11th Dist. Portage No. 2011-P-0017, 2012-Ohio-2833, ¶ 19. Under *Peterseim*,

a trial court does not abuse its discretion in denying a motion to withdraw a plea: (1) where the defendant is represented by competent counsel, (2) where the defendant was afforded a full hearing, pursuant to Crim. R. 11, before he or she entered the plea, (3) when, after the motion to withdraw is filed, the defendant is afforded a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the defendant's motion.[1] *Id.* at paragraph three of the syllabus.

{¶39} Appellant does not contest he received a full and impartial hearing or that the court gave fair consideration to his request; instead, he asserts he was neither represented by competent counsel, nor was he accorded a full Crim.R. 11 hearing. We have already determined appellant knowingly and voluntarily entered his guilty plea, during a complete Crim.R. 11 hearing, under his first assignment of error. We shall therefore confine our analysis to appellant's assertion that he was not represented by competent counsel prior to entering his plea.

{¶40} Although appellant testified at the plea withdrawal hearing that he felt coerced to enter the plea of guilty because of certain scare tactics his counsel employed, the record of the plea hearing does not support this allegation. During the plea colloquy with the court, appellant expressly stated that he had not been coerced or threatened, in any way, into entering his plea. Appellant stated he had reviewed all aspects of the plea agreement with his attorney and had signed the agreement voluntarily and of his own free will. Moreover, prior to accepting the plea, the court

---

1. The first factor of the *Peterseim* test asks a court to determine whether a defendant moving to withdraw his or her guilty plea was represented by "highly competent" counsel. The Sixth Amendment guarantees competent counsel; moreover, absent evidence to the contrary, a properly licensed attorney is presumed competent. Because reasonable competency is the standard against which due process is measured, the adjective "highly" is either superfluous or meaningless and accordingly adds nothing to the analysis. In the context of a presentence motion to withdraw a guilty plea, therefore, it follows that we need only assess whether counsel's representation passes constitutional muster.

reminded appellant that the jury trial was reaching its conclusion and asked appellant if he was certain he did not wish to finish the trial in lieu of pleading. Appellant responded firmly and without hesitation: "I don't want to continue." Neither appellant's responses to the court's questions nor the manner in which he communicated with the court indicates he had been pushed into pleading or that his will was overborne by some insidious outside influence.

{¶41} Moreover, contrary to appellant's assertions, counsel's performance demonstrates he was prepared, diligent, and advanced a reasonable and effective defense, notwithstanding the severity of the offenses and the difficulties an attorney is regularly confronted with in defending a case of this nature. During cross-examination, the victim admitted making accusations against appellant, in part, to change her mother's view of him. Moreover, counsel identified various inconsistencies between her original statement and her testimony. Counsel also underscored that the victim was unable to offer a great deal of clarity on the type and regularity of activities she alleged occurred between the ages of 10 and 16.

{¶42} Counsel also successfully limited the testimony from two of the victim's friends. At sidebar, defense counsel raised an objection to these witnesses, arguing that any discussion of the details of the alleged abuse would be hearsay. The court agreed, ruling the witnesses could *only* confirm that the victim did disclose abuse to them during the victim's junior year. Even if appellant believed counsel was not fully prepared or had "lost it" after the victim's testimony, counsel's performance did not reflect appellant's asserted perceptions.

{¶43} And, even, assuming arguendo, counsel stated "I don't know what to do" during the recess after the victim testified, such a statement does not necessarily indicate a lack of effort or effectiveness. Counsel's statement could simply be an acknowledgement that the witness appeared both strong and credible in light of his vigorous cross-examination. Regardless of this possibility, the record supports the conclusion that appellant was represented by competent counsel.

{¶44} Appellant was expressly given the opportunity to continue with trial before the court accepted his plea. He decisively refused and never expressed misgivings about counsel's representation or the circumstances under which he accepted the plea. Under the circumstances of this case, we conclude the court's decision to deny the same was sound and reasonable. Therefore, the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea.

{¶45} Appellant's fourth assignment of error lacks merit.

{¶46} Appellant's third assignment of error provides:

{¶47} "The trial court erred in rendering consecutive sentences."

{¶48} Under this assignment of error, appellant asserts the trial court's imposition of an aggregate term of 24 years for the six felony-three sexual battery counts was contrary to the legislature's intent in enacting felony sentencing statutes and violated the Eighth Amendment of the United State's Constitution.

{¶49} In reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). That section directs the appellate court "to review the record, including the findings underlying the sentence" and to modify or vacate the sentence "if it clearly and convincingly finds * * * (a) [t]hat the record does not support the

13

sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code * * * [or] (b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2), *see also State v. Marcum*, ___ Ohio St.3d ___, 2016-Ohio-1002, ¶22.

{¶50} Because the court imposed consecutive sentences, it was required to make certain findings pursuant to R.C. 2929.14(C)(4). That subsection provides:

{¶51} (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶52} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶53} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶54} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶55} Appellant pleaded guilty to six counts of felony-three sexual battery; as such, appellant could have received a maximum of five years imprisonment on each count. The trial court sentenced appellant to a term of four years on each count; the judge ordered these terms to be served consecutively to one another, for an aggregate term of 24 years imprisonment. Both the record of the sentencing hearing and the

14

judgment entry reflect the trial court considered all appropriate sentencing factors and made the requisite findings pursuant to R.C. 2929.14(C)(4). Accordingly, there is nothing to suggest the trial court's sentence was either contrary to law or ran afoul of the legislature's intent in enacting Ohio's felony-sentencing statutes.

{¶56} Moreover, appellant pleaded guilty to six counts of sexual battery. He commenced his pattern of abuse when the minor victim was only 10-years old and continued abusing her over the course of eight years. As the minor victim grew older, the nature of the sexual abuse escalated. Although appellant denied the allegations at the hearing on his motion to withdraw, he admitted he failed a polygraph test relating to the crimes; and, during his guilty plea hearing, he admitted to the truth of the allegations to which he pleaded. Given the factual background of this case and the severity of the allegations, we discern nothing cruel or unusual about the ultimate sentence imposed by the trial court.

{¶57} Appellant's third assignment of error lacks merit.

{¶58} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.

15